1
2
3
4                       UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7     MARVIN RODNEY PITMAN,                    Case No.  24-cv-02852-SI

8                    Plaintiff,

9          v.                                  **ORDER GRANTING DEFENDANTS'
                                               MOTION FOR SUMMARY
10    FIRST PRESBYTERIAN CHURCH OF             JUDGMENT**
      SAN MATEO, et al.,
11                                             Re: Dkt. No. 51
                     Defendants.
12

13            Plaintiff Marvin Rodney Pitman filed this lawsuit against The First Presbyterian Church of

14    San Mateo ("the Church") and Shannon Pappas, the Pastor and Head of Staff at the Church.  Dkt.

15    No. 1.  Defendants filed a motion for summary judgment on plaintiff's claims.  Dkt. No. 51.  For

16    the reasons stated below, the Court GRANTS defendants' motion.

17

18                                     **BACKGROUND**

19    **I.     Events Preceding Plaintiff's February 17, 2023 Phone Call**

20            From approximately 1972 until 1990, plaintiff's father was Pastor at the Church.  Dkt. No.

21    51-2 ("Pappas Decl.")  ¶ 2; Dkt. No. 51-3, Ex. D ("Pl. Dep.") at 46:13-19.  Plaintiff alleges that after

22    his father's health deteriorated, a member of the Church married his father and exerted influence to

23    alter his father's estate plans to her benefit.  Dkt. No. 56 ("Opp.") at 4.  Plaintiff became concerned

24    that his father was vulnerable to elder abuse.  *Id.*  In 2015, plaintiff communicated with Shannon

25    Pappas, Pastor of the Church.  *Id.*; Dkt. No. 51-3, Ex. E ("Pappas Dep.") at 11:25-12:7.[1]  Plaintiff

26

27            ───────────────────
              [1] The parties attached overlapping and distinct portions of the following individuals'
28    deposition testimony to their briefs: Shannon Pappas (Dkt. No. 51-3, Ex. E; Dkt. No. 56-1, Ex. 5),
      John Tastor (Dkt. No. 51-3, Ex. C; Dkt. No. 56-1, Ex. 5).

United States District Court
Northern District of California

also alleges that his father's new wife prevented plaintiff from having contact with his father and excluded plaintiff from his father's memorial service in 2022.  Opp. at 4.

## II.        The February 17, 2023 Phone Call

Plaintiff acknowledges that on February 17, 2023, he telephoned Pastor Pappas in a "roiling of emotional outrage."  Opp. at 4; Pl. Dep. at 65:8-12.  The parties' descriptions of the phone call vary slightly.

Plaintiff describes the conversation as a "dramatic and histrionic rant" during which plaintiff "demanded that the church be held to account for what he perceived to be complicity in the abuse and demise of his father, either by legal action (mentioning attorneys) or divine retribution (referencing Jesus, the devil and purgatory)."  Opp. at 4.  Plaintiff admits that during this phone call he asked Pastor Pappas for the addresses of prior pastors and became frustrated when he did not get the information he requested.  Dkt. No. 51-3, Ex. A ("Pl. Ans. RFAs") Nos. 7, 8.  Plaintiff also acknowledges that he raised his voice during the conversation.  Pl. Dep. at 75: 20-22.  Plaintiff does not dispute that he described a devil with a pitchfork to Pastor Pappas but states that he did so in a joking manner.  Pl. Ans. RFAs Nos. 1, 2; Pl. Dep. at 74:9-75:7.  Plaintiff also denies ever physically threatening Pastor Pappas.  Opp. at 4.

Pastor Pappas similarly describes a 45-minute[2] phone conversation during which plaintiff expressed his anger at the Church and demanded personal contact information of Church leadership. Pappas Decl.  ¶¶ 4-5.  According to Pastor Pappas, when he refused to provide plaintiff with the requested information, plaintiff became angry and stated, "if you do not help me, things will not go well for you."  Pappas Dep. at 137:18-138:1; Pappas Decl. ¶ 4.[3]  Pastor Pappas did not perceive plaintiff's statements about the devil and using a pitchfork as lighthearted or joking.  Pappas Dep. at 147:22-153:20.  Plaintiff also mentioned that he had been watching Pastor Pappas's sermons on YouTube, which was unsettling to Pastor Pappas.  *Id.* at 135:24-136:15. Pastor Pappas described

---

[2] Plaintiff estimated that the phone call with Pastor Pappas lasted less than thirty minutes. Pl. Dep. at 65:13-19.

[3] Plaintiff does not recall making this statement to Pastor Pappas.  Pl. Dep. at 74:5-8.

the tone of the conversation as "ominous" and "borderline threatening."  Pappas Decl. ¶ 5.

During the phone call, Pastor Pappas sent a text message to a now deceased Church Elder, stating that he was scared for his safety.  Pappas Decl. ¶ 5; Dkt. No. 51-2, Ex. A ("Feb. 17, 2023 Text Messages").  Shortly after the phone call, Pastor Pappas sent a summary of the conversation with plaintiff to members of the Church leadership, again expressing concerns about safety.   Pappas Decl. ¶ 6; Dkt. No. 51-2, Ex. B ("Feb. 17, 2023 Email").  Church Elder John Tastor directed Pastor Pappas to report the conversation to the police because he was concerned there was a potential for violence.  Dkt. No. 51-3, Ex. C ("Tastor Dep.") at 32:3-33:9, 49:21-50:7, 54:8-55:4.

### IIII.    The February 20, 2023 Police Report

On February 20, 2023, Pastor Pappas reported the incident to the San Mateo Police Department, as directed by Church leadership.  Pappas Decl. ¶ 7, Dkt. No. 56-1; Ex. 2b ("Police Incident Report").  Pastor Pappas described the phone call to the San Mateo police, explaining that he was unsettled by the call, but that he "no longer felt that plaintiff was an immediate threat, at least not to the degree [he] had felt three days earlier."  Pappas Decl. ¶ 8.  Pastor Pappas noted to police that he wanted to make sure there was a record of the incident for documentation purposes. Dkt. No. 56-1, Ex. 2a ("Garcia Dep.") at 54:9-15.  Plaintiff was contacted by Officer Garcia and the Northern California Regional Intelligence Center (NCRIC) was notified to conduct a threat assessment.  Garcia Dep.; Police Incident Report.

### IV.    Procedural Background

On May 11, 2024, plaintiff filed this lawsuit against the Church and Pastor Pappas.  Dkt. No. 1. Defendants answered on June 14, 2024.  Dkt. No. 17.  Plaintiff then filed an amended complaint, which defendants answered.  Dkt. Nos. 28 ("Am. Compl."), 32.  Plaintiff asserts two claims: (1) intentional infliction of emotional distress by both defendants, and (2) aiding and abetting of Pastor Pappas by the Church.  Defendants filed the present motion for summary judgment on September 8, 2025.  Dkt. No. 51 ("Mot.")  Plaintiff responded on September 22, 2025, and defendants filed a

United States District Court
Northern District of California

3

1    reply on September 30, 2025.  Opp.; Dkt. No. 60.[4]

2

3                                    **LEGAL STANDARD**

4          Summary judgment is proper if the pleadings, the discovery and disclosure materials on file,

5    and any affidavits show that there is no genuine dispute as to any material fact and that the movant

6    is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a).  Material facts are those which

7    may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

8    The moving party bears the initial burden of demonstrating the absence of a genuine issue of material

9    fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving party, however, has no burden

10   to disprove matters on which the non-moving party will have the burden of proof at trial.  The

11   moving party need only demonstrate to the Court that there is an absence of evidence to support the

12   non-moving party's case.  *Id.* at 325.

13         Once the moving party has met its burden, the burden shifts to the non-moving party to

14   "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (quoting then

15   Fed. R. Civ. P. 56(e)).  To carry this burden, the non-moving party must "do more than simply show

16   that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v.*

17   *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence . . .

18   will be insufficient; there must be evidence on which the jury could reasonably find for the

19   [nonmoving party]."  *Anderson*, 477 U.S. at 252.

20          In deciding a summary judgment motion, the Court must view the evidence in the light most

21   favorable to the non-moving party and draw all justifiable inferences in its favor.  *Id.* at 255.

22   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences

23   from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment

24   . . . ."  *Id.*  However, conclusory, speculative testimony in affidavits and moving papers is insufficient

25   to raise genuine issues of fact and defeat summary judgment.  *Thornhill Publ'g Co., Inc. v. Gen.*

26   _____

27         [4] Plaintiff requested to substitute attorney and proceed pro se on September 16, 2025, shortly
     before the opposition to defendants' motion was due.  Dkt. No. 53.  The Court held a status
28   conference on the request on September 19, 2025 and denied the request without prejudice.  Dkt.
     No. 55.

United States District Court
Northern District of California

1  *Tel. & Elec. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  The evidence the parties present must be

2  admissible. Fed. R. Civ. P. 56(c).

3

4  **DISCUSSION**

5  **I.    Intentional Infliction of Emotional Distress**

6        A cause of action for IIED requires proof of: (1) extreme and outrageous conduct by the

7  defendant with the intention of causing, or in reckless disregard of the probability of causing,

8  emotional distress, (2) the plaintiff's suffering severe or extreme emotional distress, and (3) the

9  defendant's extreme and outrageous conduct was the actual and proximate cause of the severe

10  emotional distress.  *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991).  A defendant's

11  conduct is considered outrageous if it is "so extreme as to exceed all bounds of that usually tolerated

12  in a civilized community."  *Id.*  (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209

13  (1982)).  Liability for emotional distress "does not extend to 'mere insults, indignities, threats,

14  annoyances, petty oppressions, or other trivialities.'"  *Cochran v. Cochran*, 65 Cal. App. 4th 488,

15  494 (1998) (quoting Rest. 2d Torts, § 46, com. d).  "Severe emotional distress means . . . emotional

16  distress of such substantial quantity or enduring quality that no reasonable man in a civilized society

17  should be expected to endure it."  *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397

18  (1970).

19        Defendants contend that plaintiff has not met his burden to present sufficient evidence on

20  two elements of his claim for intentional infliction of emotional distress: first, that Pastor Pappas's

21  action was extreme and outrageous, and second, that plaintiff suffered severe emotional distress.

22  Mot. at 5.

23        As to the first element of his IIED claim, Plaintiff alleges that Pastor Pappas' conduct in

24  reporting his February 17, 2023 phone call to the police "was outrageous and demonstrated his

25  complete disregard for plaintiff."  Am. Compl. ¶ 11.  However, plaintiff presents no evidence to

26  suggest that reporting the phone call to police was an outrageous action.  It is undisputed that

27  plaintiff excoriated Pastor Pappas during a hostile phone call on February 17, 2023.  Opp. at 4.  It is

28  also undisputed that plaintiff demanded that the church be held accountable for what he perceived

United States District Court
Northern District of California

1    to be complicity in his father's elder abuse, threatening legal action and divine retribution.  *Id.*

2    Plaintiff does not provide any evidence to suggest that what Pastor Pappas subsequently reported to

3    the police was offensive or false, let alone outrageous.  Responding to an unsettling phone call by

4    notifying the police, even if unreasonable, is certainly not so extreme or outrageous as to exceed all

5    bounds of that tolerated in a civilized society.

6        Plaintiff points to only one case to suggest otherwise.  In *Crouch v. Trinity Christian Center*

7    *of Santa Ana, Inc.*, the Court of Appeal held that berating a 13-year-old rape victim that the assault

8    was her fault was extreme and outrageous conduct sufficient to recover for IIED.  39 Cal. App. 5th

9    995, 1007-08 (2019).  The court emphasized that defendant's conduct was "made all the more

10   outrageous by her knowledge of [the victim's] plight."  *Id.* at 1008.  ("The extreme and outrageous

11   character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible

12   to emotional distress, by reason of some physical or mental condition or peculiarity. The conduct

13   may become heartless, flagrant, and outrageous when the actor proceeds in the face of such

14   knowledge[.]") (quoting Rest. 2d Torts § 46, com. f).  Here, plaintiff argues that Pastor Pappas and

15   the Church knew that plaintiff was vulnerable due the issues surrounding his father's death and that

16   making the police report was therefore outrageous.  Opp. at 7.  However, this is a conclusory

17   statement for which plaintiff provides no evidence.  Furthermore, in *Crouch* both the vulnerability

18   of the plaintiff and the defendant's action were far more extreme than in the present case.  Therefore,

19   *Crouch* is inapposite.

20       Plaintiff's opposition also argues that there are triable issues of fact regarding whether Mr.

21   Pitman's phone call to Pastor Pappas constituted a physical threat and whether the filing of a police

22   report three days after the phone call was for insurance purposes.  Opp. at 5.  However, a fact is

23   "material" only if it could affect the outcome of the suit under the governing law.  *Anderson*, 477

24   U.S. at 248-49.  Factual disputes that are "irrelevant or unnecessary will not be counted."  *Id.* at 248.

25   Here, even assuming that plaintiff did not threaten Pastor Pappas during the February 17, 2023

26   phone call and that Pastor Pappas filed the police report to limit the church's liability, no reasonable

27   jury could find Pastor Pappas' action to be extreme and outrageous.

28       While plaintiff concedes that Pastor Pappas' police report "was intended as a reflexive and

United States District Court
Northern District of California

6

1    protective measure to ensure coverage against speculative harm," plaintiff also argues that it can be

2    "reasonably inferred from the circumstances that the police report was intended to discredit and

3    intimidate" plaintiff.  Opp. at 4.  Plaintiff presents no evidence of defendants' alleged intent to

4    discredit or intimidate.  This is merely a conclusory conjecture.[5]

5        Therefore, the Court find that no reasonable jury could find intentional infliction of

6    emotional distress and GRANTS defendants' motion for summary judgment.

7

8    **II.    Aiding and Abetting**

9        California has adopted the common law rule for subjecting a defendant to liability for aiding

10   and abetting a tort.  *Casey v. U.S. Bank, N.A.*, 127 Cal. App. 4th 1138, 1144 (2005).  "Liability may

11   . . . be imposed on one who aids and abets the commission of an intentional tort if the person (a)

12   knows the other's conduct constitutes a breach of duty and gives substantial assistance or

13   encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing

14   a tortious result and the person's own conduct, separately considered, constitutes a breach of duty

15   to the third person." *Id.*

16       Plaintiff alleges that the Church aided and abetted Pastor Pappas because leaders of the

17   Church counseled Pastor Pappas to make the police report.  Am. Compl. ¶ 18.  Defendants argue

18   that the claim fails as a matter of law because there is no evidence that the police report was

19   wrongful, and therefore there is no underlying tortious activity that the Church could have aided and

20   abetted.  Mot. at 8.  The Court agrees and GRANTS defendants' motion for summary judgment.

21

22

23       [5] As to the second element of his IIED claim, plaintiff relies on an expert examination
     conducted on August 8 and August 9 (or perhaps on August 11), 2025 to argue that there is a triable
24   issue of fact as to whether plaintiff suffered severe emotional distress due to the police report.  Opp.
     at 7-8; Dkt. No. 56-1, Ex. 4 ("Expert Report").  The Court finds the expert report to be irregular and
25   of dubious value.  With this said, even if the police report Pastor Pappas made did cause plaintiff to
     suffer extreme emotional distress, plaintiff's IIED claim would still fail because there is no evidence
26   whatsoever of extreme and outrageous conduct.  "Summary judgment is proper if a claim cannot
     reasonably be regarded as so extreme and outrageous as to permit recovery."  *Schneider v. TRW,*
27   *Inc.*, 938 F.2d 986, 992 (9th Cir. 1991).

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'
motion for summary judgment.


**IT IS SO ORDERED**.

Dated:  October 21, 2025

_____
SUSAN ILLSTON
United States District Judge